[Crim. No. 2574. Second Appellate District, Division Two.—August 29, 1934.]

THE PEOPLE, Respondent, v. ALBERT FIERRO, Appellant.

J. Robert Arkush and Eugene E. Sax for Appellant.

U. S. Webb, Attorney-General, and Paul D. McCormick, Deputy Attorney-General, for Respondent.

ARCHBALD, J., *pro tem.*—Appellant and his co-defendant, Tellez, were charged with the theft of a Ford automobile in count 1 of an information, on which count they were found guilty in a trial before the court without a jury. From the judgment of conviction on such count as well as an admitted prior conviction, Fierro has appealed.

It is urged (1) that the court erred in denying appellant's motion to dismiss, made at the close of the People's case; (2) that the evidence does not show that appellant had possession of the stolen automobile; (3) that it is insufficient to establish his guilt beyond a reasonable doubt, and (4) that it is so improbable and incredible as to amount to no evidence at all.

It hardly needs the citation of authority to show that no error was committed in denying the motion to dismiss, if in fact there was evidence supporting the judgment; and the other objections raised go to the same real objection.

The evidence shows that the automobile in question belonged to Thomas H. Linden, who loaned it to his brother James, who in turn parked it on Spring Street, in Los

Angeles, about 300 feet° south of Seventh Street, at about 8:20 in the evening. Returning to the place a few minutes later, Linden found the car had been stolen. At about 10 o'clock P. M. of the same day Police Officers Shelton and Simpkins were patrolling the district around Eighth and Santee Streets, and on the north side of Eighth near Santee they observed Tellez getting into a Hudson automobile while appellant was standing by the hood on the left side of the car. Tellez started the Hudson and raced the motor "for a little bit, at which time Mr. Fierro there turned around and walked across 8th street, and right opposite where the Hudson was parked, and cranked a Model T Ford coupe [afterwards shown to be Linden's], and got into it". About that time Tellez put the Hudson in gear and pulled out from the curb "about 8 or 10 feet", where the motor sputtered and died, the car rolling back into approximately its original position. When the Hudson's motor stopped appellant got out of the Ford, leaving the motor running, and went back across the street, "raised up the hood of the [Hudson] car and tinkered with it a little bit, and Tellez continued to grind on the starter, and they tried it for a few minutes, to get it started again, and were unsuccessful". Tellez then got out of the Hudson and "they both walked east on Santa Fe to an Essex coach . . . Fierro tried the door handles of that car and was unable to get into it." Both then walked over to the Ford and got into it. The officers pursued them "until they crossed at 12th street, and we pulled alongside of them and asked them to get over to the curb; they hesitated like they were going to stop, and then started up again, and we chased them west on 12th about half a block and crowded them into the curb", where they were arrested. Officer Shelton testified that when he later that evening examined the Hudson car he found the hooks on both sides of the hood "down", and gasoline running out of the vacuum tank and that he closed the valve.

Appellant told the officers at the police station that he had served a year and a half in San Quentin "on a charge of grand theft, auto". The owner of the Hudson coach testified that he parked it near Eighth and Santee Streets about 9:30 P. M. and "took the rotor out and shut the vacuum tank", and that when he returned he found another rotor "in its place". No one saw either defendant take

the Ford from Spring Street. Tellez testified that he borrowed it from a friend called Joe, whose last name he did not know, at a dance hall between Eleventh and Twelfth Streets at Olive, ''about 25, or 20 to nine, and went up to a fellow's house'', where he ''stayed about 25 or 30 minutes'' and then picked up appellant and came down town and parked the car ''over on Eighth, near Santee''. A sister of appellant testified that Tellez came to their house ''about 9 o'clock or 10 minutes after'', and that appellant and Tellez left the house ''about 9:30'' that evening. Again, she said: ''It must have been about 10 o'clock.'' Tellez also told the arresting officers that he obtained the car at about 8 P. M., which was before the driver of the machine had parked it, and that he parked it at Eighth and Santee ''some place'', ''just a little after 9:30''. He testified that he had known appellant ''for a long time, in Texas'', and denied that either of them had a rotor with them on the occasion in question or that either put one in the Hudson. Tellez further denied that either of the two defendants went from the Hudson and tried to open the door of an Essex coach. It is apparent from the record that Tellez had no car of his own.

In our opinion under the evidence the court had a right to conclude that the two men were jointly engaged that evening in a plan to steal automobiles, and that the possession of the Ford was a joint possession pursuant to their plan to steal cars. While possession of stolen property alone is not sufficient evidence to justify a conviction of grand theft, the evidence of possession shown here, with the other circumstances indicating plan and intent to commit similar acts, in our opinion sufficiently supports the judgment rendered. Nor do we find anything that is inherently improbable or incredible in the People's evidence.

Judgment affirmed.

Stephens, P. J., and Desmond, J., concurred.